JONES, ADMINISTRATRIX, *v.* HARRISON.

4-6561                                              157 S. W. 2d 773

Opinion delivered January 19, 1942.

*C. T. Carpenter,* for appellant.

*James G. Coston* and *J. T. Coston,* for appellee.

GRIFFIN SMITH, C. J. Appellant, as administratrix of the estate of S. E. Harrison,[1] petitioned probate court to direct appellee[2] to return $864:76 for inclusion in estate assets.

S. E. Harrison died May 11, 1940, from cancer of the esophagus. He did business with Bank of Wilson. April 26, 1940, his balance was the exact sum appellant seeks to recover. Apprehending that her husband's illness would necessarily prove fatal, Mrs. Harrison called an official of the bank and asked whether, in the event of her husband's death, checks drawn by her would be paid. She was told payment would be refused.

June 7, 1939, Harrison, in writing, had authorized the bank ". . . to pay checks against my account with you, signed by my wife." Although the account was not joint, Mrs. Harrison deposited $2,000 June 7, and $400 June 24, to S. E. Harrison's credit. The money came to appellee through death of a daughter. It is conceded that $1,650 of the deposit went for real property to which appellee took title. Her statement to the banker when inquiry was made relative to the Harrison account was that $400 of the money belonged to her.

The check for $864.76 was made payable to "cash," and was immediately deposited to a new account opened by appellee. She instructed that any checks drawn by her husband should be charged against the deposit.

May 10, 1940, appellee issued a check for $734, payable to a sister. At the end of June appellee's bank statement showed a balance of 53c. In explanation of the $734 check, appellee testified that proceeds were brought to her. This statement was coupled with the assertion that the money was used to pay bills.

Appellee testified that her husband was conscious until a day or two before he died. He had been in bed most of the time for two weeks before death, but for a week did not leave the house. Six weeks prior to death

[1] Mrs. Mozelle Jones, the administratrix, was a daughter of S. E. Harrison.

[2] Appellee was the widow of S. E. Harrison. Mrs. Jones, the administratrix, was a daughter of S. E. Harrison by a former marriage.

he went with a son to Memphis for medical examination. After returning home he drove an automobile.

Other members of the family testified that for three or four weeks before May 11, Harrison was under the influence of opiates, administered to alleviate pain. Dr. R. L. Johnson's opinion was that the disease had "little or no effect" on the patient's mental condition, but ". . . his mental powers were suspended at frequent intervals during each day while he was under the influence of drugs. His mental understanding was somewhat depressed all the time a month prior to his death, due to the cumulative action of the opiates."

Urged as error is the answer made by appellee that "Mr. Harrison told me to draw that money out to pay debts." Reference is to the item of $864.76. Pope's Digest, § 5154. Appellee seeks to justify the testimony on the ground that an objection was not interposed until the answer had been given. We think the objection was sufficient. The question that elicited the response was of a nature not in itself improper; hence, appellant's counsel could not anticipate that an inadmissible answer would be given, and therefore he was not required to object until significance of the response was apparent.

Appellee contends that even if it be held that the bank balance was the property of S. E. Harrison, there was a gift *inter vivos*. This contention is predicated upon assumption that evidence of the husband's acts was admissible, or that the statute's bar was waived.

Our conclusion is that the court's decision rests upon another ground, and it is this: When appellee came into possession of $2,400 and deposited it to her husband's account, the latter instructed the bank to honor any check she might draw. There was no limitation upon this authority. If appellee's testimony regarding her husband's mental status on the seventh of June is true, he understood the effect of business transactions. That appellee considered him capable of looking after his affairs —at least in a limited way—is shown by her instruction to the bank to charge her account with checks Mr. Harrison might write. She must have thought him capable of

some volition, otherwise the direction would not have been given.[3]

Although ground for refusing to direct restoration of the fund is not stated, the judgment must have rested upon relationship of the parties and the court's belief that withdrawal of the money at the time and in the manner shown was not contrary to the husband's wishes, as expressed in the writing directed to the bank.

Affirmed.

[3] Three days after Mr. Harrison died, appellee paid Dr. Johnson $113.75. She says other bills were paid, some before May 11.